Estate of Mary A. Stowers, Deceased, National Bank of Commerce, Executor v. Commissioner.
Estate of Stowers v. Commissioner
Docket No. 32090.
United States Tax Court
T.C. Memo 1955-277; 1955 Tax Ct. Memo LEXIS 61; 14 T.C.M. (CCH) 1083; T.C.M. (RIA) 55277; October 14, 1955
*61 R. N. Gresham, Esq., 1603 Alamo National Building, San Antonio, Tex., for the petitioner. E. G. Sievers, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion Respondent determined an estate tax deficiency of $808,233.73. The sole contested issue is the value of certain real property belonging to decedent's estate. Findings of Fact The stipulated facts are found accordingly. The decedent, Mary A. Stowers, was a resident of San Antonio, Texas, and died testate on July 24, 1946. The estate tax return was filed on October 24, 1947, with the collector of internal revenue for the first district of Texas, at Austin. The National Bank of Commerce of San Antonio, Texas, the decedent's duly qualified and appointed executor, elected to value the property included in the gross estate as of one year after death, namely, on July 24, 1947, under the provisions of section 811(j), Internal Revenue Code of 1939. In the estate tax return the real property in question was valued at $586,447. Petitioner now contends that the fair market value of the property is $600,000 since one year's depreciation on the property is not allowable under section 811(j). *62 In determining his deficiency respondent valued the property at $950,000. The real property in question, sometimes hereinafter referred to as the Stowers property, is located in downtown Houston, Texas. It fronts 116 feet on Walker Street and 105.9 feet on Fannin Street and has a total of 12,284.4 square feet. The property is improved by a 10-story loft-type building known as the Stowers Building. It is constructed of reinforced concrete with enameled brick on the sides fronting on Walker and Fannin Streets. The Stowers Building was constructed in 1912 and 1913 at a cost of $171,374. The physical life of the building in 1913 was 50 years, and as of July 24, 1947, the remaining life was not less than 16 years. The building is located 136 feet from Main Street, the primary business street in the heart of Houston. Fannin Street parallels Main Street on the west, and is a secondary street. Both Fannin and Walker Streets have heavy pedestrian traffic, although less than that of Main Street. Fannin Street runs to the southwest part of Houston where a large part of the city's residential area is located. Buses pass and stop at the corner of the Stowers Building which is within two blocks *63 of all the major office buildings in downtown Houston. At the time of the decedent's death and on July 24, 1947, the Stowers Building was occupied as a retail furniture store by the G. A. Stowers Furniture Company, a corporation in which the decedent owned a controlling interest. The company paid an annual net rental of $30,000 for use of the Stowers property. The Stowers land and the building thereon was appraised at $600,000 for Texas state inheritance tax purposes. The fair market value of the Stowers property on July 24, 1947, was $675,000. Opinion LEMIRE, Judge: The question presented is the fair market value as of July 24, 1947, of the decedent's improved real property located on the corner of Fannin and Walker Streets in downtown Houston, Texas. The petitioner contends for a valuation of $600,000, while the respondent requests that his determination of $950,000 be sustained. Both parties rely upon the opinions of qualified expert witnesses to support their respective valuations. The valuations based upon the opinions expressed by the petitioner's witnesses range approximately from a low of $565,000 to a high of $622,000. The valuations based on respondent's experts *64 range approximately from a low of $980,000 to a high of $1,074,000. Such a large differential between the valuations reched by the opposing witnesses may, in some measure, be due to the lack of sales of truly comparable properties within a reasonable period surrounding the critical date here involved. All of the expert witnesses used a somewhat similar approach to support the opinions expressed, i.e., replacement costs less depreciation, land value, and capitalization of reasonable rental. They differed widely in the construction index to be applied in determining replacement costs, the useful life for depreciation purposes, the square foot value of the land, and what was a reasonable rental. The Court is unable to rationalize the wide gap in the valuations arrived at by the opposing witnesses. In the absence of any evidence of sales of reasonably comparable properties in the vicinity within an appropriate period, we are persuaded that the valuation contended for by the petitioner is too low, and that the valuation fixed by the respondent is excessive. We have given careful consideration to the testimony of the expert witnesses and the reasons given in support of their respective *65 opinions. After a painstaking appraisal of all the relevant factors bearing upon a determination of fair market value we are of the opinion that on the critical date, July 24, 1947, the real property in question had a fair market value of $675,000 and have so found as a fact.